# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

PAULA ROY,                                         :

                    Plaintiff,

       -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.        :

Case No. 3:09-cv-470

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

---

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6ᵗʰ Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6ᵗʰ Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6ᵗʰ Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6ᵗʰ Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6ᵗʰ Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD in May, 2001, alleging disability from December 31, 2000. (Tr. 63-65). Plaintiff's application was denied at the initial level and Plaintiff took no further appeal. (Tr. 41-44).

Plaintiff filed a second application for SSD on October 4, 2005, alleging disability from January 20, 2005, due to scoliosis, herniated discs, migraines, chronic bronchitis, nerve damage in neck and low back, depression, and hypothyroid. (Tr. 64-68; 93). Plaintiff's application was denied initially and on reconsideration. (Tr. 45-47; 92). Administrative Law Judge Daniel Shell held a hearing, (Tr. 453-79), and subsequently determined that Plaintiff is not disabled. (Tr. 14-31). The Appeals Council denied Plaintiff's request for review, (Tr. 5-8), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that she has severe vertebrogenic disorder with residual effects of spinal surgery and affective (bipolar) disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 20, ¶ 3; Tr. 24, ¶ 4). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 26, ¶ 5). Judge Shell then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 29, ¶ 10). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 30-31).

Plaintiff has a history of idiopathic scoliosis and in 1984, orthopedic surgeon Dr. Lehner performed an anterior fusion in the area ot T-11 to L-3. *See,* Tr. 365-69. Postoperatively, Plaintiff had reduced thoracic and lumbar curves, but she did well postoperatively. *Id.*

In conjunction with her first application for benefits, examining physician Dr. Vitols reported on October 18, 2001, that Plaintiff had a left concave lumbar and right concave dorsal scoliotic pattern with limited ranges of motions and tenderness, was unable to walk on her heels and toes, and that her straight leg raising was positive bilaterally. (Tr. 164-70). Dr. Vitols also reported that Plaintiff's diagnoses were chronic dorsolumbar pain associated with residual scoliosis and anxiety and depression per history. *Id.* Dr. Vitols opined that Plaintiff had no impairment of her upper extremities, but that she had a restricted range of motion of her dorsolumbar spine and that she had no ability to bend or twist at the waist. *Id.*

Dr. Lehner reported that in 2004, Plaintiff returned with complaints of back pain. (Tr. 365-69). Dr. Lehner identified Plaintiff's diagnoses as left leg radiculopathy and degenerative

problems below the scoliotic curve. *Id.*

Plaintiff consulted with neurosurgeon and pain specialist Dr. Demirjian on March 15, 2005, who essentially reported that Plaintiff's physical exam was normal, and he identified Plaintiff's diagnosis as migraine and possible mixed-type chronic headache. *Id.* Dr. Demirjian noted on June 21, 2005, that Plaintiff reported that her headaches had stopped, but that she was having intermittent tingling in her feet and hands. (Tr. 324-25). Dr. Demirjian also noted that Plaintiff had increased pain on extension and lateral rotation of her back, nonspecific decreased sensation in a stocking distribution, decreased vibration in her lower extremities, and borderline decreased vibration in her upper extremities. *Id.*

An EMG performed on June 25, 2005, revealed carpal tunnel syndrome and the possibility of underlying peripheral polyneuropathy. (Tr. 183-84).

Dr. Lehner reported in August, 2005, that Plaintiff's diagnosis was idiopathic scoliosis with right thoracic and left lumber curves with the lumbar curve fused from T11 to L3 with degenerative arthritis below the fusion, that she had an antalgic gait to the left side, pain on range of motion of her lumbar spine, and degenerative changes in the low lumbar spine on x-ray. (Tr. 370-71). Dr. Lehner also reported that Plaintiff was able to stand/walk for one-half hour in an eight-hour day and for one-quarter hour without interruption, sit for two to four hours in an eight-hour day and for thirty minutes without interruption, and that she was able to lift up to five pounds occasionally. *Id.* Dr. Lehner opined that Plaintiff was unemployable. *Id.*

In November, 2005, Dr. Lehner reported that Plaintiff had been his patient since 1981, that he had performed spine surgery in 2004 [sic], that she subsequently started to develop vague symptoms of pain in her legs, and that she would also complain of pain in her back. (Tr. 367-

5

68). Dr. Lehner also reported that he had not seen Plaintiff from 1999 until August, 2005, when she complained of low back pain, that a CAT scan revealed some bulging of the L4-L5 and L5-S1 disc below the fusion area, and that her neurological examination was normal. *Id.* Dr. Lehner noted that Plaintiff had degenerative spondylosis in the lower lumbar spine which impaired her abilities to perform activities of work, that she had a high school education, and that he did not know if she could be trained to perform any work that did not involve heavy lifting. *Id.*

Plaintiff was hospitalized February 10-15, 2006, at which time Dr. Lehner performed anterior and posterior combined fusions in the area of L3 to the sacrum with instrumentation. (Tr. 220-39). Subsequently, Dr. Lehner reported that Plaintiff reported that the pre-operative pain about which Plaintiff had complained was almost completely gone, that she would be wearing a brace for four months post-operatively, and that Plaintiff had very limited motion from the lower thoracic spine on down the sacrum and that there should be no movement at all. (Tr. 365-66). Dr. Lehner also reported that Plaintiff should be off work until at least about seven months after the February, 2006, surgery. *Id.*

Dr. Demirjian reported on April 19, 2006, that Plaintiff was doing very well since her recent back surgery and that she had almost no pain. (Tr. 313). On September 6, 2006, Dr. Demirjian noted that Plaintiff complained of "a number of problems including headache"and that her physical examination was normal, (Tr. 306-07).

An MRI of Plaintiff's lumbar spine performed on September 9, 2006, revealed narrowing and disk herniation at the L5 level and a small annular tear at the L4-5 level. (Tr. 299). A lumbar CT performed on September 14, 2006, revealed loose pedicle screws at S1 but an intact fusion. (Tr. 297-98).

6

Dr. Lehner noted on November 20, 2006, and again in February, 2007, that Plaintiff had continuing complaints of back pain. (Tr. 360; 359). An April 9, 2007, bone scan revealed changes due to increased biomechanical stress and Plaintiff subsequently underwent sacroiliac joint injections. (Tr. 385-86; 384; 434).

Plaintiff continued to receive treatment from Dr. Demirjian until he retired in 2007, at which time she began to receive treatment from Dr. Vandersluis. (Tr. 389-90; 394-95; 422-23).

A January, 2008, MRI of Plaintiff's cervical spine revealed mild multilevel cervical spondylosis, (Tr. 413), and an EMG revealed carpal tunnel syndrome on the right. (Tr. 417).

Plaintiff began receiving treatment from physiatrist and pain specialist Dr. Manocha on January 29, 2008, who reported that Plaintiff had decreased sensation in the left C5 level and dermatome sensation in the right C5, C6, and C7, that her lumbar range of motion was severely restricted, and that straight leg raising was positive on the right. (Tr. 427). Dr. Manocha also reported that Plaintiff had decreased strength in plantar flexion bilaterally and dorsiflexion on the right. *Id.*

In February, 2008, Dr. Lehner performed sacroiliac injections following which Plaintiff reported that while her pain was initially improved; it subsequently returned. (Tr. 410-11; 414-15; 436; 438). Plaintiff began physical therapy for her back pain on April 14, 2008, and continued with therapy through at least May 8, 2008. (Tr. 405-09).

The record contains evidence with respect to Plaintiff's alleged mental impairment.

Psychologist Dr. Mary Ann Jones examined Plaintiff in connection with her first application for SSD. Dr. Jones reported on July 24, 2001, that Plaintiff went through school to the eleventh grade, earned her GED, was seeing a counselor for symptoms of bipolar disorder, had a

drug history significant for marijuana which she continued to use, and that she reported she was unable to work because of mood swings. (Tr. 142-46). Dr. Jones also reported that Plaintiff had normal movements and speech, that her presenting demeanor seemed somewhat resigned and dysphoric, she was restless, was alert and oriented, and that she presented as preoccupied with her symptomatology and probably somewhat delusional about her symptoms. *Id.* Dr. Jones noted that Plaintiff presented with marginal to sufficient information, judgment, and common sense reasoning ability to live independently and make important decisions, that her diagnosis was bipolar disorder NOS, and that her GAF was 50. *Id.* Dr. Jones opined that Plaintiff's was unable to relate sufficiently with others to perform even simple; repetitive tasks, her ability to understand, remember, and follow instructions was moderately impaired; her ability to maintain concentration and attention to perform simple, repetitive tasks was mildly to moderately impaired; and that her ability to withstand the stress and pressures associated with day-to-day work activity was impaired. *Id.*

On November 30, 2005, examining psychologist Dr. Flexman reported that Plaintiff graduated from high school, displayed a relaxed posture and mild gait disturbance, had normal facial expressions, appropriate speech, and that she had a good energy level. (Tr. 185-88). Dr. Flexman also reported that Plaintiff's affect was embellished with no lability noted, she displayed overt pain behaviors, her concentration was good, her recent memory was fair, and her remote memory was good, and that her judgment was fair. *Id.* Dr. Flexman noted that Plaintiff's obsessive thinking concerning somatic or other psychological problems was judged to be out of proportion with reality and that somatization was present, and that her thought process were normal. *Id.* Dr. Flexman identified Plaintiff's diagnoses as pain disorder associated with both general medical condition and psychological factors and major depression and he assigned her a GAF of 55. *Id.* Dr. Flexman

opined that Plaintiff had a slight impairment in her abilities to understand, remember, and carry out short, simple instructions and to make judgments for simple work-related decisions and moderate impairments in her abilities to sustain concentration, to interact with others, and to respond appropriately to work pressures in a normal work setting. *Id.*

Plaintiff began receiving mental health treatment from a counselor in November, 2006. (Tr. 374-83). On April 24, 2007, the counselor reported that she had been treating Plaintiff to help her manage her chronic pain, depression, and anxiety related to her health issues. *Id.* The counselor also reported that Plaintiff was not able to perform many work-related mental activities, that she required frequent rest periods and needed to reposition frequently. *Id.* The counselor opined that Plaintiff had marked restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace. *Id.*

After reviewing the medical evidence of record, a medical advisor (MA) testified at the hearing that Plaintiff's impairments did not meet or equal the Listings. (Tr. 466-76). The MA also testified that Plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, that she should never climb ropes, ladders, or scaffolds, should not work at unprotected heights, she should not perform jobs requiring high production quotas, and that she should have only superficial interaction with others. *Id.*

Plaintiff argues in her Statement of Errors that the Commissioner erred by failing to properly evaluate Dr. Lehner's opinions and by failing to properly evaluate her allegations of disabling pain. (Doc. 9).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406

(6th Cir. 2009).  "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544.  "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

_____

FN 1.  Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

The record establishes that Dr. Lehner has been Plaintiff's long-term treating physician—he has been treating her since 1981.  Plaintiff has undergone two spinal surgeries which Dr. Lehner has performed and which are related to her long-standing scoliosis.

Judge Shell noted that Dr. Lehner opined in August, 2005, that Plaintiff was unemployable. (Tr. 21-22).  However, Judge Shell declined to give this opinion controlling or even deferential weight on the basis that the "ultimate conclusion" as to whether an individual is disabled is reserved to the Commissioner.  *Id.*  Judge Shell also determined that Dr. Lehner's opinion was not supported and was inconsistent with other evidence of record.  *Id.*

Although Dr. Lehner indeed opined that Plaintiff was "unemployable", he also described Plaintiff's functional limitations as well as the physical findings which he found on clinical exams.  (Tr. 370-71).  However, Judge Shell failed to consider those factors when he determined that Dr. Lehner's opinion was not entitled to controlling or even deferential weight.

Even assuming that Dr. Lehner's opinion was not entitled to controlling weight, Judge Shell failed to provide an analysis as to whether it was entitled to deferential weight. Specifically, while Judge Shell recited the regulatory standard for determining whether a physician's opinion is entitled to deferential weight, he failed to provide an analysis under that standard.  (Tr. 21-22).

This Court concludes that the Commissioner failed to properly evaluate long-term treating physician Dr. Lehner's opinion.[2]  Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court

---

[2]  The Court is not suggesting that these are the only flaws in the Commissioner's analysis of Dr. Lehner's opinion.

12

must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the factual issues have been resolved and that the record does not adequately establish Plaintiff's entitlement to benefits. Specifically, the Court notes that while the Commissioner failed to properly evaluate Dr. Lehner's opinion, there may be adequate bases for the Commissioner to reject that opinion. That is, of course, the Commissioner's function and is not the function of this Court.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is further recommended that this matter be remanded to the Commissioner for further administrative proceedings. Finally, it is noted that this is a Fourth Sentence remand and

13

it is therefore recommended that this matter be terminated on the Court's docket.

November 22, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).